UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY BARKER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　　　Defendant. | Case No.: 18cv1624-LAB (KSC)<br><br>**ORDER OVERRULING OBJECTIONS AND ADOPTING REPORT AND RECOMMENDATION; AND**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |

After an administrative law judge (the "ALJ") denied his application for social security disability benefits, Plaintiff Corey Barker brought this appeal. The matter was referred to Magistrate Judge Karen Crawford for a report and recommendation. The parties filed motions for summary judgment, and Judge Crawford issued her report and recommendation (the "R&R") on June 28, 2019. Barker filed written objections, and the Defendant filed a reply. Barker was represented by counsel both before the ALJ and in this Court.

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* Section 636(b)(1) similarly requires that a district judge "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

This section does not require some lesser review by the district court when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original).

**Objections**

The Court has reviewed the entire R&R, which is substantial. The R&R correctly sets forth the legal standards for reviewing an administrative law judge's decision. The Court does not repeat those here, except as necessary for discussion. The R&R also includes a lengthy discussion of the record, most of which neither party objects to. It ultimately recommends denying Barker's motion for summary judgment and granting Defendant's cross-motion, and affirming the ALJ's decision. Barker filed limited but specific objections, arguing that the Court should reject the entire R&R and remand the matter for further administrative proceedings.

Most of the R&R appears to be non-objectionable, and neither party objected to most of its findings and discussion. To the extent neither party has objected to the R&R, the Court accepts it as correct, and **ADOPTS** it. *See* § 636(b)(1); Fed. R. Civ. P. 72(b). The following very limited factual background is taken from that portion of the R&R.

/ / /

**Factual Background**

Barker was born in 1959 and has worked in the furniture, home improvement, and construction industries, and as a short-order cook. He said he had not worked since his disability onset date of March 23, 2014, and filed his application for disability insurance benefits on July 21, 2014. He claimed that his ability to work was limited by his back pain and anxiety. His claim was denied at the initial and reconsideration stages, and he requested a hearing before an administrative law judge.

After the onset date, however, Barker collected unemployment benefits as late as the first quarter of 2015. As part of the process of applying for unemployment benefits, he was required to certify that he was able to work and looking for employment. Barker also worked part-time for a florist after the claimed disability onset date, but stopped on September 27, 2016. He reported to the ALJ that he was still looking for work.

The relevant medical discussion begins with Barker's visit to Dr. Ede in August and September of 2013, for a psychiatric evaluation. At that time, he did not appear to be in physical distress. Dr. Ede diagnosed him with panic disorder, and prescribed medications.

The first discussed medical visit after the claimed onset date was to Dr. William Bailey, for lower back pain. Dr. Bailey noted that Barker appeared to be in pain and walking with difficulty. Dr. Bailey diagnosed him with a lumbar sprain and strain, and prescribed treatment.

Barker saw a psychiatrist, Dr. Shahla Ramin, on September 30, 2014, who relied only on Barker's self-report and his own observations during the visit. Dr. Ramin's impression was that Barker was suffering from adjustment disorder with depressed mood, as well as psychological and environmental problems. He found no real limits on Barker's mental or social abilities, and noted that he was able to complete both simple and detailed tasks, and the activities of daily living.

Barker saw Dr. Moyad, an orthopedic surgeon, on October 1, 2014 for an evaluation of his back problems. After an examination, Dr. Moyad diagnosed Barker with (1) lumbar spondylosis and L4-5 Spondylosis with Stenosis; (2) mild left leg radiculopathy; (3) right thoracic back rhomboid chronic strain; and (4) left shoulder sub-acromial impingement/Bursitis. He also completed a functional assessment. In his opinion, Barker in an 8-hour workday with normal breaks could be expected to sit for up six hours and stand or walk for up to six hours. He opined that Barker could lift and carry 20 pounds occasionally and 10 pounds frequently. He also opined that Barker could be expected to climb, stoop, bend, and crouch only occasionally, and that reaching with his right shoulder should be limited.

On November 13, 2014, Dr. Hartman conducted a consultative review of records, giving great weight to the opinions of Drs. Ramin and Moyad. On this basis, he concluded that Barker's back problems were severe, and his mood disorder was not severe. He noted mild restrictions and difficulties in daily living, maintaining social function, and maintaining concentration, persistence, and pace. He believed that one or more of Barker's impairments can be expected to cause pain and limitations, but that Barker's own statements about the limiting effects of his symptoms were not supported by the medical evidence alone. His determination of Barker's limitations were similar to those of Dr. Moyad.

On February 5, 2015, Dr. Khong performed a consultative review of Barker's back problems and affective mood disorder, based on the records from Drs. Ramin, Moyad, Ede, and Bailey. He, too, gave great weight to the opinions of Drs. Ramin and Moyad — although he noted that Dr. Moyad had a short relationship with Barker. Dr. Khong essentially concurred with Dr. Hartmann's opinion, although he projected that with physical therapy, Barker would improve to the point that, within about a month, he could perform past relevant work.

Barker was also treated by Drs. Kundu and Santoyo from October 2, 2014 to February of 2015. Dr. Kundu ordered physical therapy, X-rays, and lab work.

The X-rays showed several problems, including evidence of degenerative disc disease at L3, L4, and L5; and at T6–T9. He prescribed medications and directed Barker to treat his back with moist heat.

On November 20, 2014, Dr. Santoyo saw Barker about hypertension. No back problems were reported. On January 7, 2015, Dr. Kundu saw Barker about his anxiety, and Dr. Kundu addressed issues with anxiety medication. No back problems were reported or observed during this visit. On January 19, 2015, a registered dietician saw Barker about his hypertension, hyperlipidemia, and weight management. On February 26, 2015, he had an appointment with Dr. Kundu but left without being seen.

Barker underwent two rounds of physical therapy. During his first round of treatment, January through June of 2015, he reported increased pain during this period, saying he had strained his back while renovating a kitchen. He continued to work on the kitchen renovation, which aggravated his pain. In spite of these setbacks, however, he completed the physical therapy and reported no lower back pain. He reported pain in the upper thoracic area after moving a piece of furniture, the physical therapist recommended that he be discharged, since all treatment goals for his lower back pain had been met.

During his second round of physical therapy from May to July of 2016, he was working at a job that made more physical demands that he had expected. For example, his back pain increased after he lifted and carried heavy furniture, including counters at the flower shop where he worked. In the first two visits, his gait was guarded and he reported some stiffness in his lower back. By May 25, the pain and stiffness had lessened. But by June 14, he reported it had increased because he had been lifting furniture. He skipped the next visit, saying he had been in too much pain after lifting and carrying the counters. On June 22, his pain level was low. On June 29, he again described an increase in pain because he had again been lifting and moving objects at work. He missed his next appointment

because he had the flu, but reported that he was still working and had built a retaining wall. Near the end of this round of therapy, he was advised to decrease the intensity of his activities and to take a week off of work, because it was aggravating his back pain. On his last visit on July 28, he reported improvement in his leg pain, and no significant lower back pain.

The R&R discusses Barker's treatment by several other doctors, Physician Assistants, and a Nurse Practitioner through November of 2016. Neither party objected to this analysis, or discussed it in any detail. Nevertheless, several points bear mention. His gait, back pain, and range of motion were not consistently bad. In fact, his gait was often observed to be normal and his back pain often minimal. Except for Physician Assistant Randall Culler, who found a decreased range of motion in forward and side flection, these other medical professionals found Barker's range of motion normal.

**Discussion**

Turning to those portions Barker objected to, he finds fault with the R&R's analysis of the ALJ's decision to accept the opinion of examining physician Dr. Sabourin and reject the opinions of Dr. Moyad, an examining physician; and Drs. Khong and Hartman, non-examining physicians. He argues that the ALJ's discussion of record evidence was faulty in several particulars, and that the decision to credit Dr. Sabourin's opinion was erroneous in light of the record. Assuming Dr. Sabourin's opinion is rejected, the ALJ made an alternative finding which could support denial of benefits. The ALJ found that Barker was able to do work in the national economy in accordance with Medical-Vocational guidelines. Barker argues that this finding is contradicted by the record. Finally, the ALJ mentioned Barker's work as a short-order cook, and Barker argues this should not have been treated as substantial gainful employment (SGA) because it was too long ago, and he did not earn enough at that job for it to qualify as SGA. The objections focus solely on Barker's back pain and its causes, and his ability to lift

and carry objects; he does not argue that the ALJ erred with regard to findings based on his mental health, mobility issues, or other limitations or conditions.

The Court's rulings on Barker's objections are, in large part, driven by the standard of review. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Court must affirm the ALJ's decision. *Id.* The ALJ's findings must be supported by substantial evidence. *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000). This need not amount to a preponderance, however. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Barker's objections largely argue that the ALJ should have drawn a different conclusion from the evidence, and that the ALJ should have rejected examining physician's Dr. Sabourin's findings in favor of the opinions of examining physician Dr. Moyad, and the two non-examining physicians whose opinions are largely based on Dr. Moyad's notes. But the ALJ was permitted to, and did, resolve conflicts between these two examining physicians' opinions based on the record. Furthermore, the ALJ was permitted to, and did, resolve substantial conflicts such as conflicts between Barker's activities, limitations, and symptoms as reported by various sources: Barker to both the ALJ and to the medical professionals who treated or examined him, Barker's mother to the ALJ, and medical professionals as reflected in notes and records. The fact that Barker can point to evidence that might have led to a different conclusion does not mean the ALJ's conclusion was unsupported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Barker's objections seize on the fact that he had a degenerative disc condition and other spinal problems as proof that his condition was actually getting substantially worse, and characterize Dr. Sabourin's and the ALJ's conclusions as irrational in light of this. Specifically, he suggests that the ALJ must have found he

recovered from his degenerative disc disease. But he does not show that a degenerative condition is necessarily severe or disabling. The question is not whether his condition is getting worse; it is whether his condition has degenerated to the point that he is disabled. Barker particularly disagrees with the R&R's observation that the ALJ could give Dr. Sabourin's opinion more weight because (among other things), it was more recent. If, as Barker contends, his condition could only get worse, this was reasonable, because the most recent opinion should reflect the greatest limitations and for that reason is likely to be the most probative. *See Delegans v. Colvin*, 584 Fed. Appx. 328, 331 (9th Cir. 2014); *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In fact, the opinions of Drs. Moyad, Khong, and Hartman were more limited. This merely represents a conflict, however; it does not show that Dr. Sabourin's opinion had to be rejected. The ALJ reasonably concluded, for a number of other reasons supported by the record, that Dr. Sabourin's opinion should be given greater weight.

The ALJ's finding that Barker's medical records frequently showed mild or no symptoms is not an example of reliance on "a few isolated instances of improvement" to find a claimant not disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Rather, the records over a period of time do reflect conservative treatment (such as pain management and physical therapy rather than surgery), and frequent findings of mild or no symptoms. It is also worth noting that Dr. Khong believed that with physical therapy, Barker could soon recover to the point where he could do work he had done in the past.

The ALJ also emphasized Barker's relatively active lifestyle after the onset date, which included employment, vigorous and challenging activities, and a wide range of daily activities. The ALJ found this inconsistent with the opinions of Drs. Moyad, Khong, and Hartman. In fairness, it is rather unusual to see a disability claimant so active. In addition to relatively sedentary activities such as watching television, reading, paying bills, and handling money, Barker was able to take care

8
18cv1624-LAB (KSC)

recovered from his degenerative disc disease. But he does not show that a degenerative condition is necessarily severe or disabling. The question is not whether his condition is getting worse; it is whether his condition has degenerated to the point that he is disabled. Barker particularly disagrees with the R&R's observation that the ALJ could give Dr. Sabourin's opinion more weight because (among other things), it was more recent. If, as Barker contends, his condition could only get worse, this was reasonable, because the most recent opinion should reflect the greatest limitations and for that reason is likely to be the most probative. *See Delegans v. Colvin*, 584 Fed. Appx. 328, 331 (9th Cir. 2014); *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In fact, the opinions of Drs. Moyad, Khong, and Hartman were more limited. This merely represents a conflict, however; it does not show that Dr. Sabourin's opinion had to be rejected. The ALJ reasonably concluded, for a number of other reasons supported by the record, that Dr. Sabourin's opinion should be given greater weight.

The ALJ's finding that Barker's medical records frequently showed mild or no symptoms is not an example of reliance on "a few isolated instances of improvement" to find a claimant not disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Rather, the records over a period of time do reflect conservative treatment (such as pain management and physical therapy rather than surgery), and frequent findings of mild or no symptoms. It is also worth noting that Dr. Khong believed that with physical therapy, Barker could soon recover to the point where he could do work he had done in the past.

The ALJ also emphasized Barker's relatively active lifestyle after the onset date, which included employment, vigorous and challenging activities, and a wide range of daily activities. The ALJ found this inconsistent with the opinions of Drs. Moyad, Khong, and Hartman. In fairness, it is rather unusual to see a disability claimant so active. In addition to relatively sedentary activities such as watching television, reading, paying bills, and handling money, Barker was able to take care

8
18cv1624-LAB (KSC)

of himself and his mother, who has Alzheimer's. He performed chores such as vacuuming, doing laundry, cooking, shopping, feeding and walking the dog, and doing yard work. He could and did drive. As late as November of 2016, he regularly drove from Fontana, California where he lived to visit his parents in Santee, which is a substantial distance. He also traveled by walking, riding in a car, and riding a bicycle. He engaged in hobbies such as hiking and fishing.

Barker reported that in September of 2014, he was painting his parents' house. In February of 2015, he renovated a kitchen. He fell out of a tree in March of 2015 while trying to cut off a branch. He moved and lifted furniture in June of 2015. In May of 2016, he started a new job that he found physically challenging. In June of 2016, he said he had to carry counters and other heavy objects at work. In July of 2016, he built a retaining wall. The ALJ relied on all these activities—which Barker himself reported and does not contest—as evidence that he was not as limited as of Drs. Moyad, Khong, and Hartman believed he was.

Barker now objects that there was no evidence the furniture he carried was 50 pounds or more, and suggests that these activities were all isolated and he had to rest and recuperate between them. The record does not bear this out. For example, during his first round of physical therapy, he reported on February 10, 13, and 19 that he had been working on the kitchen renovation, which aggravated his lower back pain. This reasonably suggests that he was engaged in an ongoing and physically demanding project over the course of days.

During his second round of physical therapy in 2016, he reported engaging in physically demanding activity at his new job. On June 14, he said he had been lifting and carrying heavy furniture. He skipped the next visit, saying he said he had been lifting and carrying heavy counters. But on June 22, he said his pain level was low. Then on June 29, he said his back pain increased because he had been lifting and moving heavy objects at work. He skipped the next appointment, saying he had the flu, but reported that he was still working and built a retaining wall.

Whatever the exact weight of the furniture, counters, other heavy objects, and materials he was using to build the retaining wall, it is clear he consistently performing rather physically challenging tasks. This is entirely consistent with the ALJ's findings.

For unclear reasons, Barker also objects that the R&R should have determined whether his work as a short-order cook—which he performed from February 2001 to March 2003 and again December 2005 to March 2007—amounted to substantial gainful activity, given that his reported earnings were $5944.53 for 2001 and $2977.50 for 2007. He claims that it is "mathematically impossible" for either of these to have been enough to amount to substantial gainful activity, because the monthly average was too low. The earnings record to which Barker cites, however, is clearly incomplete. For 2006, it reports no income at all, even though he was employed the whole year. The ALJ resolved this apparent contradiction by pointing out that for virtually his entire career Barker has worked "under the table," meaning his reported income has for many years been lower than his actual income. The ALJ accepted record evidence showing that Barker had earned $10 per hour and worked 40-hour weeks during his second stint as a short-order cook, which is enough to amount to substantial gainful activity. (AR at 30–31, 180.)

In any event, as Defendant's response points out, Barker appears to have waived this objection. And even if he had not, any error here was harmless. The ALJ treated Barker's former work as a short order cook as past relevant work to which Barker could return, and cited 20 C.F.R. 416.965. Also, short order cook was one of several jobs in the national economy that the vocational expert found Barker could perform.

The Court has considered Barker's objections, even if not discussed in detail in this order, and has reviewed de novo all portions of the R&R to which Barker has objected. Having done so, the Court **OVERRULES** his objections, and

10

18cv1624-LAB (KSC)

1 **ADOPTS** the R&R. Barker's motion for summary judgment is **DENIED** and
2 Defendant's cross motion for summary judgment is **GRANTED**.

The ALJ's decision is supported by substantial evidence and is free from reversible legal error. *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000). The ALJ's decision is **AFFIRMED.** The Clerk shall enter judgment for Defendant and against Plaintiff.

**IT IS SO ORDERED**.

Dated: September 9, 2019

*[signature]*
Hon. Larry Alan Burns
Chief United States District Judge